UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINTON M. GOREE,

        Petitioner,               Case No. 1:16-cv-1133

v.                                         Honorable Janet T. Neff

THOMAS MACKIE,

        Respondent.
_____/

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations and Procedural Background**

Petitioner Quinton M. Goree presently is incarcerated at the Oaks Correctional Facility. He is serving a sentence of 15 years to 50 years imprisonment for kidnapping, in violation of MICH. COMP. LAWS § 750.349, and a consecutive sentence of 5 years to 20 years for conspiracy to commit first-degree home invasion, in violation of MICH. COMP. LAWS § 750.110a(2).[1] Petitioner was sentenced on December 15, 2011, after his guilty plea in Kent County Circuit Court on October 31, 2011.

Petitioner describes the underlying facts as follows:

On August 8, 2011 at about 4:30 a.m., Grandville Police were contacted by David Byker (age 60) regarding a kidnap[p]ing. Mr. Byker told police that his wife had been kidnap[p]ed and the family vehicle stolen. Mr. Byker told police that his wife had been kidnap[p]ed by two black males who entered their home. The suspects took his wife and put her into their gold van and drove off. After the suspects took his wife, they called him and told him that he had to pay $200,000 to get his wife back. The suspects stated that they only wanted the money and then his wife would be released.

At about 5:30 a.m., Mrs. Byker called 911 and advised that she had been abducted and was now safe in Wayland at a business. Mrs. Byker's statement was consistent with her husband's as to how the offense occurred. She stated that she was placed in the backseat of the vehicle and her eyes and mouth were covered with tape. After driving some distance, the vehicle stopped and Mrs. Byker was taken out. She was forced to walk into a cornfield to a telephone pole. She was duct taped to the pole with the tape being placed around her thighs and waist. After sensing that the suspects had left, she began to struggle her way out. She ran out of the cornfield to a nearby industrial building. She then ran down the street towards another building and saw a truck with its parking lights on. She awakened the driver and he called 911.

Subsequent investigation resulted in the arrest[s] of the Defendant and two co-defendants.

---

[1] Petitioner was also charged with first-degree home invasion and conspiracy to commit kidnapping. Those charges were dismissed as a part of the plea agreement.

(Pet., ECF No. 1-1, PageID.18-19.) Petitioner also concisely describes the proceedings in the circuit court:

> Pursuant to a plea agreement, on October 31, 2011, Mr. Goree pled guilty to counts 1 [kidnapping] and 4 [conspiracy to commit first-degree home invasion]. The balance of the charges were to be dismissed. There was also a sentence agreement that the People would recommend a sentence within the applicable guidelines range. Mr. Goree was also required to testify truthfully against any of the other co-defendants. The People also agreed that OV [Offense Variable] 7 would be scored at zero points. The factual basis for the plea came from Mr. Goree's testimony where he told the court that he held the complainant for some reward or ransom. Mr. Goree also admitted to conspiring with two other individuals to commit the home invasion in conjunction with the kidnap[p]ing.

(*Id.*, PageID.18.) The circuit court sentenced Petitioner as described above. The sentences were within the respective guideline ranges, the kidnapping sentence was at the top of the range and the conspiracy sentence was at the bottom of the range. The ranges were determined using a score of zero points for Offense Variable 7.

The circuit court appointed appellate counsel for Petitioner. After reviewing the file, counsel determined that he was not able to identify any non-frivolous issues for appeal. He moved to withdraw. The circuit court permitted the withdrawal, but refused to appoint new appellate counsel. Thus, an application for leave to appeal was never filed on Petitioner's behalf.

During August of 2013, Petitioner filed a motion for relief from judgment pursuant to MICH. CT. R. 6.500 et seq. The circuit court denied the motion by opinion and order dated August 29, 2013. Petitioner sought leave to appeal that denial in the Michigan Court of Appeals. That court denied leave by order entered May 27, 2014. Petitioner then sought leave to appeal to the Michigan Supreme Court.

The Michigan Supreme Court, in lieu of granting leave, sent the case back to the circuit court stating:

> [W]e REMAND this case to the Kent Circuit Court for the appointment of substitute appellate counsel, in light of *Halbert v. Michigan*, 545 U.S. 605 (2005). Based on our review of the record, the circuit court granted original appointed appellate counsel's motion to withdraw, but denied the defendant's request for the appointment of substitute appellate counsel. On remand, substitute appellate counsel, once appointed, may file an application for leave to appeal in the Court of Appeals for consideration under the standard for direct appeals, and/or any appropriate postconviction motions in the circuit court, within six months of the date of the circuit court's order appointing counsel. Counsel may include among the issues raised, but is not required to include, the issues raised by the defendant in his motion for relief from judgment that was filed in 2013.

*People v. Goree,* 856 N.W.2d 691 (Mich. 2014) (parallel citations omitted). On January 23, 2015, the circuit court appointed Attorney Suzanna Kostovski to assist Petitioner with his appeal.

Petitioner, with the assistance of counsel, filed a delayed application for leave to appeal his convictions and sentences in the Michigan Court of Appeals. The court of appeals denied the application for lack of merit in the grounds presented. Petitioner sought leave to appeal to the Michigan Supreme Court. That court also denied leave by order entered March 8, 2016. Petitioner did not file a petition for certiorari in the United States Supreme Court.

Petitioner filed his habeas petition in this Court on September 9, 2016,[2] raising three issues:

> I. MICHIGAN BREACHED THE PLEA AGREEMENT BY ARGUING FOR A CONSECUTIVE SENTENCE, THUS VIOLATING PETITIONER'S DUE PROCESS RIGHTS AND CLEARLY ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT.

---

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on September 9, 2016, and it was received by the Court on September 15, 2016. Thus, it must have been handed to prison officials for mailing at some time between those dates. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

II. PETITIONER'S PLEA IS INVOLUNTARY AND VIOLATES DUE PROCESS AND CLEARLY ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT.

III. THE TRIAL COURT'S RELIANCE ON INACCURATE INFORMATION TO ENHANCE PETITIONER'S SENTENCE VIOLATES THE DUE PROCESS CLAUSE AND CLEARLY ESTABLISHED UNITED STATES SUPREME COURT PRECEDENT.

(Pet., ECF No. 1-1, PageID.17.) Petitioner represents that he raised each of these issues in his direct appeal. (Pet., ECF No. 1, PageID.6-9.)

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

> I. <u>Breach of the plea agreement</u>

Petitioner claims that the prosecutor violated the plea agreement by arguing for consecutive sentences and that the court permitted the violation when it imposed consecutive sentences. The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal Constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in

  the writing, the actual intent of the parties is ineffective, except when it can be made
the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed.
2000). Consistent with the principle articulated by Williston, this court has held that
the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

  The facts regarding the Petitioner's agreement were conclusively found by the trial court. In denying Petitioner's motion for relief from judgment, the trial court stated:

  To the extent that defendant believes the plea agreement included an agreement that his sentences would be served concurrently, there is no support in the record for such an argument. In exchange for his plea, the prosecuting attorney agreed to dismiss the remaining charges and recommended a sentence within the properly scored sentencing guidelines, with OV 7 scored at zero points. Despite defendant's arguments to the contrary, he received everything he bargained for.

*People v. Goree*, No. 11-08863-FC, p.3 (Kent Cty. Cir. Ct. Op., Aug. 29, 2013). Those findings of fact regarding the terms of the agreement and Petitioner's receipt of the promised benefits, enjoy a presumption of correctness on habeas review. To prevail, Petitioner must provide clear and convincing evidence to the contrary. He has failed to do so. Petitioner's habeas claim regarding breach of the plea agreement has no merit.

### II. Involuntary and unknowing plea

Even if concurrent sentences were not expressly promised, Petitioner argues that the possibility of consecutive sentences was unknown to him; therefore, his plea was not knowing and voluntary. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970). To find a constitutionally valid guilty plea, the defendant must understand the direct consequences of his plea. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Brady*, 397 U.S. at 755; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

The trial court concluded that Petitioner's plea was knowing and voluntary because the court had fully informed Petitioner of the consequences of his plea. Petitioner does not dispute that the trial court informed Petitioner of the maximum penalties for each count and that there were no mandatory minimums. Beyond that, Petitioner was promised only that the prosecutor would

recommend a minimum sentence within the guidelines. The circuit court noted that it was not required under state law to inform Petitioner that the sentences might be consecutive.[3]

The Sixth Circuit has reached the same conclusion in rejecting a habeas petitioner's claim that his plea was involuntary where a state court did not inform him that the state sentence on the offense to which he pleaded guilty could, in the court's discretion, be imposed consecutively to his federal sentences. *See Hall v. Bradshaw*, 466 F. App'x 472 (6th Cir. 2012). The court stated that "'whether a federal sentence runs consecutive to or concurrent with a state sentence is not considered a direct consequence of the plea.'" *Id.* at 474 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing cases)); *see also Wilson v. McGinnis*, 413 F.3d 196, 200 (2d Cir. 2005) (concluding that habeas relief was not warranted based on the trial court's failure to inform the defendant that he could receive consecutive state sentences) (cited with approval in *Hall*, 466 F. App'x at 474). Thus, failure to inform a defendant that consecutive sentences might be imposed does not deny him knowledge of a direct consequence of the plea and thereby render a plea unknowing or involuntary.

Petitioner has failed to demonstrate that the state court's determination that his plea was knowing and voluntary is contrary to or an unreasonable application of clearly established federal law. Petitioner has also failed to show that the state court's conclusion was based on an unreasonable determination of the facts based on the plea proceedings. Accordingly, Petitioner's contention that his plea was invalid has no merit.

---

[3]The circuit court supported that proposition with citation to *People v. Boswell*, 291 N.W.2d 57, 59 (Mich. Ct. App. 1980) ("[Defendant] need not be advised of the possibility of consecutive sentences.") (citations omitted).

### III. Improper scoring of sentence variables

Finally, Petitioner claims that his sentence violates due process because it is based on inaccurate information. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a

claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner fails even to argue that the facts relied upon by the court at sentencing were either materially false or based on false information. *Id.*. Instead, Petitioner states only that two variables should have been scored differently under the guidelines. Such a claim does not implicate due process. Moreover, even accepting Petitioner's arguments, his minimum sentence still fell within the sentencing guidelines range. Such a claim clearly falls far short of the sort of egregious circumstances implicating due process.

The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). As Petitioner has framed the issue, it simply cannot be said that the state-court's rejection of Petitioner's claim was based on an unreasonable determination of the facts or was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner's habeas challenge to his sentences has no merit.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   October 3, 2016                     /s/ Janet T. Neff
                                            Janet T. Neff
                                            United States District Judge